IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**KEISHA D. HEAVENER,**

      **Plaintiff,**

                                        **Civil Action 2:16-cv-73**
**vs.**                                  **Judge Algenon L. Marbley**
                                        **Chief Magistrate Judge Elizabeth P. Deavers**


**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**


**REPORT AND RECOMMENDATION**

Plaintiff, Keisha D. Heavener, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance benefits.  This

matter is before the Chief United States Magistrate Judge for a Report and Recommendation on

Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition

(ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 8).  For

the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's

Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff filed her applications for benefits in September 2012, alleging that she has been

disabled since December 1, 2000, due to spinal fusion, an iliac bone graph with insertion of a

Harrington rod in her spine, a congenital handicap on her right side, severe scoliosis, pelvic

kidneys, restrictive lung disease, laminectomy, flatback syndrome, depression, obsessive

compulsive disorder ("OCD") and anxiety.  (R. at 103.)  Plaintiff's applications were denied

initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative

law judge. Administrative Law Judge Paul E. Yerian (the "ALJ") held a hearing on May 2, 2014,

at which Plaintiff, represented by counsel, appeared and testified.  (R. at 52-102.)  George W.

Coleman III, a vocational expert, also appeared and testified at the hearing.  (R. at 92-102.)

On July 9, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within

the meaning of the Social Security Act.  (R. at 34-51.)  On December 4, 2015, the Appeals

Council denied Plaintiff's request for review and adopted the ALJ's decision as the

Commissioner's final decision.  (R. at 1-3.)  Plaintiff then timely commenced the instant action.

## II.   HEARING TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she was married and lived in a house

with her husband and two children.  She weighed 187 pounds and was 5'2."  (R. at 59.)   She

testified that she has an Associate's degree in office management.  (R. at 61.)  Plaintiff testified

that she last worked full-time from 1998 to 2001 for an accounting firm where she had a desk job

performing payroll and processing tax returns.  (R. at 66-67.)  In 1997, Plaintiff testified she held

two clerical positions for medical providers for short periods of time.  Plaintiff testified that she

had to leave both positions because she was physically incapable of performing the required

work.  (R. at 65-66.)  Prior to those positions, Plaintiff worked from 1996 to 1997 in a desk job

as an administrative assistant.  (R. at 64.)  Plaintiff testified that she still worked part-time as an

independent consultant, selling jewelry and handbags to customers from catalogs.  (R. at 62.)

She testified that the work involved less than a dozen home shows within the last couple of years

during which she engages in approximately ten minutes of talking and then sits down while the customers shop from the catalog.  (R. at 63.)

Plaintiff testified that she had back surgery—a laminectomy in May 2001 in order to treat a "pain that shot down [her] leg and the hip" affecting her sciatic nerve.  Plaintiff stated that the surgery was largely successful but she still retained issues with her nerves on her left side.  She testified that doctors recommended physical therapy, which she was unable to complete because of the Harrington rods located in her back.  (R. 69.)

Plaintiff testified that she had a Harrington rod, which puts pressure on her lower back, otherwise known as a "flatback" symptom.  Due to the pressure, standing upright is very difficult, Plaintiff stated.  Plaintiff testified that she also suffered a herniated disk, requiring removal, which has resulted in lasting effects.  For example, she "can only sit for so long" and can "only stand for so long."  Plaintiff testified that she cannot sleep on her back and that a very light level of physical activity—like getting out of a vehicle—could "pull or strain those muscles that have been cut through back there" sending her into a swelling episode.  (R. at 71.)  If the episode continues, Plaintiff explained, she loses feeling in her left leg.  (R. at 72.)

Plaintiff acknowledged that she was able to perform sedentary desk work prior to her laminectomy.  (*Id.*)  Plaintiff testified, however, that she could only stand for about ten minutes at a time before needing to lay down for 10-20 minutes to rest.  (R. at 73.)  Plaintiff further testified that she has been advised to ice her back for periods of 20 minutes at a time.  (R. at 74.)  Plaintiff testified that she was able to walk if she has something to hold on to, for example, a stroller, or a shopping cart.  (*Id.*)

Plaintiff testified that her right arm does not extend, which prohibited her from completing physical therapy.  (R. at 74-75.)  While, Plaintiff is still able to use her right hand to type on a keyboard, she has "minimal strength" on her right side, which has caused scoliosis.  (R. at 75.)  Plaintiff testified that she couldn't perform filing duties at her medical jobs because of the physical limitations to her right side.  (R. at 76.)

After the laminectomy, Plaintiff explained that the doctors told her there was nothing else they could do for the time being.  The surgery removed the part of the disk that was herniated, but nothing else could be done "until the rest of that disk finally gives way."  (R. at 81.)  Plaintiff testified that she was on over-the-counter pain medication as well as Flexeril post-surgery. Plaintiff also still performs certain home therapy exercises she was given.  (R. 81.)

With respect to household work, Plaintiff testified that she does contribute, but her husband and her mother "help out a lot" and perform any required lifting.  (R. at 77.)  Plaintiff explained that her mother would help out with childcare two to three days a week.  (R. at 79.) Plaintiff testified that she can lift one but not two gallons of milk and not for extended periods of time.  (R. at 80.)  Plaintiff also testified that she owns a car and drives it less than once a week. (R. at 60-61.)

Plaintiff testified she went to see a mental health professional in 2004 for her OCD and was diagnosed with depression.  (R. at 84.)  She further testified that her mental health issues had certain physical manifestations, for example, washing her hands compulsively, to the point of bleeding.  (R. at 85.)  Plaintiff testified that Dr. Schneer prescribed Lexipro as well as a sleeping aid.  Plaintiff stopped seeing Dr. Schneer because her symptoms improved and she was "ashamed" of seeing a psychiatrist.  But, Plaintiff enumerated, within six months of stopping

4

therapy and the medication her OCD and anxiety came back "double."  At that point, however,

Plaintiff did not want to go back on medication because she wanted to have a baby.  (*Id*.)  After

the birth of her first child, Plaintiff testified, she suffered from postpartum depression.  Her

gynecologist prescribed Zoloft, which Plaintiff states, she has been taking ever since.  Plaintiff

testified that her symptoms "are better; however, stressful situations bring on the anxiety" (R. at

86), which results in behavior such as overzealously washing her hands and compulsively

securing her house and car.  (*Id*.; R. at 88-89.)  Plaintiff also testified that her experience with

Zoloft has been better than her experience with Lexapro.  (R. at 88.)

**B.      Vocational Expert Testimony**

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past

jobs include bookkeeper-salesclerk, administrative assistant, receptionist and front office

assistant.  (R. at 94-95.)

The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity

("RFC") to the VE.   (R. at 95-97.)  Based on Plaintiff's age, education, and work experience and

the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could perform her past

relevant work as a front office assistant.  (R. at 97-98.)

The VE further testified that if Plaintiff "could not stoop, could not crawl, could not . . .

climb stairs or ramps, could not use the non-dominant right upper extremity for either fingering

feeling, or handling," Plaintiff would only be able to work in "an accommodated work setting

where they're going to have an ergonomic assistant needed to be in place by the employer, or

some kind of accommodation necessary to perform the essential functions."  (R. at 98-99.)

Furthermore, the VE testified that, if Plaintiff was limited to standing no more than 10 minutes at

a time followed by a period of rest up to 15 minutes of lying down, had difficulty walking independently, experienced OCD symptoms and back pain flare-ups at the levels described in Plaintiff's testimony, there would be no jobs that she could perform.  (R. at 99-100.)

The VE further testified that if Plaintiff is unable to complete work tasks at a consistent pace or at production levels expected by most employers as much as twenty-six (26) percent of every day, she would not be able to  maintain full-time competitive employment without an accommodation by the employer.  (R. at 101.)

### III.    MEDICAL RECORDS

#### A.    Steven M. Canowitz, M.D.

Plaintiff was seen by Dr. Canowitz in May 2004 as a follow up to her scoliosis and restrictive lung disease secondary to the scoliosis.  The treatment notes state that Plaintiff was "otherwise doing quite well."  (R. at 294.)  During the visit, Plaintiff sought advice for high-risk family planning and reported occasional shortness of breath and wheezing, but was not being treated for the latter.  Plaintiff also reported "doing much better on the Lexapro" with her OCD and depression during the consult.  (*Id.*)  Dr. Canowitz opined that Plaintiff had restrictive lung disease, shortness of breath, OCD and depression and concluded that all of the aforementioned were "controlled and stable."  (*Id.*)

In February 2005, Dr. Canowitz treated Plaintiff again for left-sided chest pressure.  He concluded that the pressure was likely stress and weight-gain related.  Plaintiff also suffered from some sinus drainage related to her upper respiratory infection.  Dr. Canowitz's treatment notes reveal he planned to treat Plaintiff "symptomatically with over-the-counter medications."  (R. at 291.)  On April 10, 2008, chest x-rays were performed on Plaintiff, which showed no acute

6

cardiopulmonary disease and a normal echocardiographic report with a normal left ventricular size and function.  (R. at 299-300.)

In February 2013, Steven M. Canowitz, M.D., completed a Physical Capacity Evaluation of Plaintiff.  Dr. Canowitz stated that he had been treating Plaintiff for nine years and that her medical issues include flat back syndrome resulting from spinal fusion and placement of the Harrington rod, disc herniation resulting in the laminectomy and related sciatica problems.  As a result, Dr. Canowitz stated, Plaintiff has the inability to bend and lift.  Dr. Canowitz opined that Plaintiff is limited to one hour at a time of walking, standing, driving and sitting.  Moreover, Plaintiff attempted physical therapy, but was not successful, due to congenital handicap of her right arm/hand.  That condition "has led to her developing Restrictive Lung Disease leading to significant shortness of breath and dyspnea with minimal exertion."  (R. at 310.)

With respect to her work capacity, Dr. Canowitz opined that, in an eight hour work day, Plaintiff could stand for one hour, walk less than one hour and sit for two hours, in total. Plaintiff additionally could not lift any weight.  (R. at 310.)  Dr. Canowitz further opined that Plaintiff could perform simple grasping and pushing and pulling with her hand only.  She could only reach above shoulder level with her left arm.  (R. at 311-12.)  She could not bend, squat, crawl, climb steps or ladders.  (R. at 312.)  She was likely to have partial or full day unscheduled absences from work occurring five or more days per month due to the diagnosed conditions, pain and/or side effects of medication.  Finally, Dr. Canowitz noted that Plaintiff's condition is likely to deteriorate if placed under stress related with a job because her anxiety would increase should she return to the workforce.  (*Id.*)

### B.        State Agency Evaluations

The State Agency consultants' physical assessments provided that there was insufficient

evidence to evaluate the Plaintiff's disability application.  (R. at 106; 113.)

## IV.  THE ADMINISTRATIVE DECISION

On July 9, 2014, the ALJ issued his decision.  (R. at 37-47.)  At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity

since June 30, 2009, the date on which her insurance benefits expired.  (R. at 39.)  The ALJ

found that Plaintiff had the severe impairments of post remote Harringon rod insertion for

thoracic scoliosis, status post laminectomy at L5-S1, a history of restrictive lung disease, and

congenital abnormality of the right upper extremity.  (*Id.*)  The ALJ determined that Plaintiff's

depression and OCD were non-severe impairments.  (R. at 40.)  He further found that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.        Is the claimant engaged in substantial gainful activity?
2.        Does the claimant suffer from one or more severe impairments?
3.        Do the claimant's severe impairments, alone or in combination, meet or
          equal the criteria of an impairment set forth in the Commissioner's Listing of
          Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.        Considering the claimant's residual functional capacity, can the claimant
          perform his or her past relevant work?
5.        Considering the claimant's age, education, past work experience, and residual
          functional capacity, can the claimant perform other work available in the national
          economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 41.)  At

step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] find[s] that, through the date last insured, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except that she could not climb ladders/ropes/scaffolds, be exposed to hazards such as unprotected heights or dangerous machinery, or reach overhead with her upper right extremity.  She could have occasional exposure to dust, fumes, odors, gases, poorly ventilated areas, temperatures extremes, or humidity and wetness.  She could use her right upper extremity for frequent fingering and feeling and occasional handling.

(R. at 41.)  In reaching this determination, the ALJ did not accord controlling weight to Dr.

Canowitz, Plaintiff's treating physician, noting that his own treatment records "simply do not

support such extensive limitations" as those proscribed by his Physical Capacity Evaluation in

2013.  (R. at 43.)  The ALJ gave "little weight" to the assessments of the State Agency

consultants "as there was . . . sufficient evidence to assess [Plaintiff's] physical restrictions and

limitations."  (*Id.*)

Relying on the VE's testimony, the ALJ concluded that Plaintiff could perform her past

relevant work as an administrative assistant and a front office assistant.  (R. at 46.)  He therefore

concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.*)

## VII.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42

U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial

evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286

(6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v.

Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th

Cir.  2007)).

## VIII.  LEGAL ANALYSIS

Plaintiff raises two challenges to the ALJ's decision.  Specifically, she contends that: (1)

the ALJ committed reversible error in failing to failing to properly weigh the opinion of the

treating specialist, Dr. Canowitz; and (2) the ALJ erred in finding Plaintiff's mental impairments

non-severe.  The Court disagrees and concludes that substantial evidence supports the ALJ's decision.

### A.      Treating Physician's Opinion

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion

with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

**B.      Application**

The ALJ did not err in his decision not to afford controlling weight to the opinion of

Plaintiff's treating physician, Dr. Canowitz with respect to his analysis of Plaintiff's physical

impairments and provided good reasons for not giving it controlling weight.  Specifically, the

ALJ properly considered the *Wilson* factors in concluding that Dr. Canowitz's opinion was

entitled to little weight.  378 F.3d at 544.  First, the ALJ did acknowledge that Plaintiff had a

treating physician relationship with Dr. Canowitz, who treated Plaintiff from 2004 through 2013.

(R. at 43.)

Second, the ALJ properly found that Dr. Canowitz's opinion is not consistent with, or

supported by, substantial medical evidence in the record.  This includes Dr. Canowitz's own

treatment notes, which reflect that Plaintiff has only some occasional shortness of breath and

wheezing as a result of her scoliosis and restrictive lung disease but was otherwise doing well.

Dr. Canowitz's own treatment notes also specify that Plaintiff's restrictive lung disease,

depression and OCD conditions are "controlled and stable."  (*Id*.)  An ALJ properly discounts an

opinion of a treating physician that is not supported by his or her treatment notes.  *See Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (upholding the failure to accord a

treating physician's opinion controlling weight if the physician's own diagnostic reports are

unsupportive of petitioner's disability claim); 20 C.F.R. § 404.157(c)(2) and (3) (identifying

"supportability" and "consistency" as relevant considerations).

In addition to Dr. Canowitz's treatment notes, the ALJ thoroughly examined the medical

record as a whole.  Substantial evidence supports his conclusion not to afford Dr. Canowitz's

opinion controlling weight.  For instance, no clinical and laboratory findings support the

limitations Dr. Canowitz described in his functional capacity assessment from 2013.  (*Id.*)  In addition, after undergoing her laminectomy, Plaintiff participated in physical therapy with progress notes from June 28, 2001 showing that she "felt more range of motion and mobility and reported no pain at all."  (*Id.*)  Plaintiff was also "noted to be independent with a home exercise program on land and water."  (*Id.*)  Additionally, as the ALJ correctly noted, there are "no treatment notes in the record that show any follow-up for any of [Plaintiff's] medical conditions until she was seen by Dr. Stephen Canowitz in May 2004 for follow-up for her scoliosis and restrictive lung disease."  (*Id.*)

Moreover, Plaintiff's "overall care has been conservative and non-aggressive since her surgery in 2001.  The record reveals that she required minimal, intermittent, and irregular treatment, which at times was only for acute illnesses such as a sore throat or sinus pressure.  Plaintiff has not required pain medications, participation in pain management, or any subsequent surgeries.  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir.2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period.")  All of this evidence demonstrates that the ALJ was justified in not providing Dr. Canowitz's opinion controlling weight because it is not supported by clinical or laboratory findings and is inconsistent with other substantial evidence.  *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, the Court generally will uphold an ALJ's decision to discount that opinion.")

Plaintiff's contrary arguments on this point are not well-taken.  Plaintiff points only to Dr. Canowitz's 2013 report as demonstrative of his argument that the opinion is entitled to controlling weight.  (ECF No. 10, at 7-8.)  Plaintiff, however, does not support her contention with any specific medical evidence in the record.  In other words, Plaintiff has not pointed to any medical evidence in the record that independently supports Dr. Canowitz's opinion.  The report and treatment notes are not consistent with Plaintiff's diagnoses constituting a disability, and the ALJ was justified in his determination to discount Dr. Canowitz's opinion.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (proper to reject physician's conclusion where inconsistent with substantial evidence in the record indicating otherwise).  Plaintiff's subjective attacks on the ALJ for supposedly substituting his own medical judgment is, as the Commissioner contends, not a cognizable grounds for setting aside findings that are supported by substantial evidence in the record.  *See Mullins v. Sec'y of H.H.S.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimaint's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings").

Accordingly, the Undersigned concludes that the ALJ did not err in failing to accord controlling weight to the functional capacity assessment of Dr. Canowitz.  Furthermore, substantial evidence supports the ALJ's decision.

**C.      Severity of Mental Impairments**

Plaintiff also asserts that the ALJ erred by determining that Plaintiff's mental impairments were non-severe in step two of his decision.  The United States Court of Appeals for the Sixth Circuit has described step two of the sequential process as follows:

> At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)."  [20 C.F.R. §§ 404.1520a(a) and 404.1520a(b)(1)].  If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. at §§ 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq*.; *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).  The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520a(c)(4).  The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more.  *Id*.  If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. *Id*. at § 404.1520a(d)(1).  Otherwise, the impairment is considered severe and the ALJ will proceed to step three.  *See id*. § 404.1520a(d)(2).

*Rabbers*, 582 F.3d at 652–53.  Thus, if no signs or laboratory findings substantiate the existence

of an impairment, it is appropriate to terminate the disability analysis.  *See* SSR 96-4p, 1996 WL

374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory

findings to substantiate the existence of a medically determinable physical or mental impairment,

the individual must be found not disabled at step 2 of the sequential evaluation process set out in

20 CFR 404.1520 and 416.920 . . . .").[2]

---

[2] The ALJ found several severe physical impairments and then properly proceeded through the rest of the sequential analysis.  Where the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003).  Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity."  20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment);

16

Applying the legal standard to the facts in this case, the ALJ acknowledged that Plaintiff possessed medically determinable mental impairments of depression and OCD, but determined that they were non-severe because they caused no more than a mild limitation in her ability to perform mental work activities. (R. at 40-41.) Again, substantial evidence supports this determination. The evidence of record showed that Plaintiff commenced treatment for depression and OCD in January 2004 and her symptoms improved with medication management. Moreover, Plaintiff successfully went off her mental health treatment medication by October 2004 in preparation for childbirth. Additionally, despite suffering worsened mental health symptoms after the birth of her second child in August 2006, Plaintiff reported successful management of her symptoms with Zoloft. (R. at 40.) Moreover, Plaintiff has failed to provide any evidence indicating the severity of any mental impairment that lasted for 12 continuous months prior to the expiration of her insured status. Specifically, no contemporaneous therapy or counseling records demonstrate how depression or OCD affected Plaintiff's ability to function or work during that time. (R. at 44.)

Accordingly, the Undersigned concludes that the ALJ did not err in finding Plaintiff's mental impairments to be non-severe and substantial evidence supports this conclusion.

## IX.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

---

*Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

17

## X.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: February 21, 2017                                    /s/ *Elizabeth A. Preston Deavers*
                                                            ELIZABETH A. PRESTON DEAVERS
                                                            UNITED STATES MAGISTRATE JUDGE